UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 25-20137-659 |
| | ) | Hon. Kathy Surratt-States |
| **CHAD DUNCAN,** | ) | |
| | ) | **Chapter 12 Proceeding** |
| Debtor. | ) | #52 (Re: #59, #69)     12/11 |
| | ) | |

## THIRD INTERIM ORDER AUTHORIZING DEBTOR'S INTERIM USE OF CASH COLLATERAL PURSUANT TO § 363 OF THE BANKRUPTCY CODE AND GRANTING ADEQUATE PROTECTION

This matter is before the Court on the First Amended Emergency Motion for Entry of an Interim Order and Final Order Authorizing Debtor's Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code, *see* Doc. 52 (the "**Motion**") filed by Chad Duncan, as Debtor and Debtor in Possession (the "**Debtor**"). This Court held a hearing on the Motion on December 11, 2025. Appearing at the hearing were, among others, counsel for the Debtor; counsel for Exchange Bank of Missouri; and counsel for Lol Finance, Co. Based upon the pleadings and the parties' arguments, the Court finds and concludes that grounds exist to enter a Third Interim Order Authorizing the Debor's Interim Use of Cash Collateral Pursuant to § 363 of the Bankruptcy Code upon the below terms.

1. The Court has jurisdiction over the Motion and issues raised therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Sufficient notice of the hearing on the Motion was provided to creditors and parties-in-interest as required under Rule 4001(b)(3) of the Federal Rules of Bankruptcy Procedure.

3. On August 12, 2025 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 12 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

4. As of the Petition Date, Debtor was in possession and/or control of cash and, since the Petition Date, has continued business operations that generate cash and has reduced and continues to reduce various assets of the bankruptcy estate to cash including, without limitation, certain crops and government farm program payments (collectively, the "**Cash Collateral**").

5. As of the Petition Date, Debtor is indebted to:

    A. Exchange Bank of Missouri ("**Exchange**"), in the approximate amount of $5,800,000.00, secured by, among other things, certain real estate, livestock, equipment, crops, government farm program payments and accounts receivable. Accordingly, Exchange has a lien on Debtor's Cash Collateral.

    B. Debtor and 3-D Pig Company, Inc. (a non-debtor entity) are indebted to Lol Finance, Co. ("**LOL**") in the approximate amount of $2,983,761, secured by certain parcels of land, farm equipment, and fixtures located at Debtor's hog farm(s) owned by 3-D pig Company, Inc. as well as certain receivables from such farms, contract rights, and accounts. Accordingly, LOL has a lien on the Debtor's Cash Collateral.

    C. The U.S. Small Business Administration (the "**SBA**") in the approximate amount of $491,960.00. The SBA's loan is secured by, among other things, a second-priority lien (or first-priority upon any otherwise unencumbered assets) on Debtor's assets, which may include cash collateral. Accordingly, the SBA has a lien on the Debtor's Cash Collateral

      D.    On information and belief, Debtor is indebted to The Cooperative Finance Association, Inc. ("**Cooperative Finance**") in the approximate amount of $614,917.58 secured by certain crops, assets, inventory, and cash proceeds thereof. Accordingly, Cooperative Finance has a lien on the Debtor's Cash Collateral

      E.    On information and belief, Debtor is indebted to Bank of Springfield ("**Springfield**") in the approximate amount of $734,000, secured by certain land, crops, equipment, and the proceeds thereof. Accordingly, Springfield has a lien on Debtor's Cash Collateral

6. Good cause has been shown for the entry of this Order. Debtor's abilities to operate its farms, harvest crops, and maximize a return for its creditors require the availability of the Cash Collateral on and subject to the terms and conditions set forth in this Order. In the absence of the use of the Cash Collateral, the continued operation and maintenance of Debtor's farms may not be possible, and serious and irreparable harm to Debtor, its estate, and its creditors would occur.

It is hereby **ORDERED** that the Motion is **GRANTED** on an interim basis as set forth hereinafter, to wit:

      A.    Debtor shall be permitted to use Cash Collateral in accord with the Budget attached hereto as **Exhibit A** subject to the following conditions:

          (i)    Debtor shall store as much of the harvested crops produced by Debtor's farms as possible at Debtor's residence, one of Debtor's farms, or any other property under Debtor's control (each a "**Permitted Storage Location**") (Debtor believes he can store approximately 20% of the harvested crops at a Permitted Storage Location);

          (ii)    Any crops that cannot be stored at a Permitted Storage Location may be sold by Debtor at Debtor's discretion subject to the terms set forth below;

          (iii)    Until January 15, 2026, up to and when the Debtor reaches the Cash Threshold, if Exchange is a joint payee on any checks for crop sales, Exchange shall sign over to Debtor any joint checks Debtor receives in any Cash Collateral. Until January 15, 2026, Debtor may use an amount of Cash Collateral to continue his farming operations equal to the greater of (i) $300,000.00 or (ii) 25% of the estimated value of all crops planted and harvested in 2025 which is approximately $680,000.00 (the "**Cash Threshold**");

          (iv)    All proceeds from crop sales above the Cash Threshold must be deposited into a trust account with Debtor's counsel, Carmody Macdonald P.C., or such joint checks will be held by the Bank, and in any event, to be held pending further direction from this Court; and

          (v)    Debtor shall provide Exchange the following information:
              a.    Documentation as to the harvest yields by farm with total acres harvested by each farm;
              b.    Documentation to establish where all unsold crops are stored and the quantities of such stored crops;
              c.    Documentation on all crops sold including weight tickets for all sales and designation of the field where crop was harvested;
              d.    Documentation of 2025 FSA or Crop Insurance production acres;
              e.    Copies of all sales proceeds checks; and
              f.    Records of all Cash Collateral funds used.

      B.    As adequate protection for use of the Cash Collateral, Exchange, LOL, the SBA, Cooperative Finance, and Springfield (the "**Prepetition Creditors**") shall have replacement liens in any prepetition assets of Debtor's estate that were subject to the their respective liens, whensoever acquired, pursuant to the provisions of 11 U.S.C. § 552, and to the same extent, validity, priority, perfection, and enforceability as their interests in any assets of Debtor's estate and to the extent of any diminution in value in those interests. The security and priorities granted

to the Prepetition Creditors shall not affect or impair the separate existing collateral of any other creditors. Any and all causes of action under Chapter 5 of the Bankruptcy Code are expressly excluded from the foregoing replacement liens.

C. Each of the Prepetition Creditor liens and administrative claims shall be subject to a carve out (the "**Carve-Out**") of the payment of Debtor's fees as per Section 326, for the payment of attorneys' fees for Debtor's Counsel (subject to allowance by the Court) in an aggregate amount not to exceed $50,000.00.

D. Nothing in this Order shall prohibit any party from challenging the amount, nature, extent, validity and priority of another party's claims, ownership rights, or security interests in, and liens on, Cash Collateral, any other collateral, or any prepetition collateral and all such rights are expressly preserved

E. Debtor is authorized to use the Cash Collateral in accordance with this Order through January 15, 2025.

F. Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

G. A final hearing on the Motion shall be held on January 15, 2026 at 1:30 p.m. in the District Courtroom, at the United States Bankruptcy Court for the Eastern District of Missouri, Northern Division, 800 Broadway, 3rd Floor, Hannibal, Missouri 63401.

H. Any objections to the Motion shall be filed with the Court and served by e-mail no later than January 8, 2025 upon Counsel for Debtor: Robert E. Eggmann, Carmody MacDonald, P.C., 120 South Central Ave., Suite 1800, St. Louis, MO 63105 (e-mail: ree@carmodymacdonald.com). Any party who has already submitted an objection to the Motion need not file a subsequent objection.

I. Not later than two (2) business days after the date of the entry of this order, Debtor shall serve a copy of this order upon all parties entitled to receive service in the above referenced bankruptcy case as required by Federal Rule of Bankruptcy Procedure 4001(d) and shall file a certificate of service compliant with Local Rule of Bankruptcy Procedure 9004(D) no later than 24 hours thereafter.

_____
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: December 15, 2025
St. Louis, Missouri
jjh

**Order prepared by:**
Robert E. Eggmann
Thomas H. Riske
Nathan R. Wallace
Samuel S. Brand
Carmody MacDonald, P.C.
120 South Central Ave., Suite 1800
St. Louis, Missouri 63105
(314) 854-8600
(314) 854-8660 Fax
ATTORNEYS FOR TRUSTEE

Exhibit A

## 4 Month Budget of Chad Duncan

| Week Ending | 12/12/25 | 12/19/25 | 12/26/25 | 1/2/26 | 1/9/26 | 1/16/26 | 1/23/26 | 1/30/26 | 2/6/26 | 2/13/26 | 2/20/26 | 2/27/26 | 3/6/26 | 3/13/26 | 3/20/26 | 3/27/26 | 4/3/26 | 4/10/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | | | | | | | | | | | |
| Hog Barn Rent | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 | $7,325.00 |
| Two Rivers Income | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 | $200.00 |
| Crop Sales[1] | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 | $54,687.50 |
| **Gross Income** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** | **$62,212.50** |
| **Expenses** | | | | | | | | | | | | | | | | | | |
| Rent | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 | $15,384.62 |
| Seed, Chemicals and Fertilizer Inputs | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 | $6,250.00 |
| Fuel | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 | $1,400.00 |
| Household Expenses | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 | $1,375.00 |
| Insurance | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 | $2,353.00 |
| Farm Labor | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 | $4,700.00 |
| Repairs and Maintenance | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 | $1,846.00 |
| Swine Farm Management Fees | $1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 | 1,850.00 |
| Utilities | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 | $1,166.00 |
| Taxes | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 | $692.00 |
| **Total Expenses** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** | **$37,016.62** |
| **Net Income (Loss)** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** | **$25,195.88** |

*Note regarding Hog Barn Rent:*

*Murphey-Brown of Missouri LLC currently leases land from Debtor and currently pays approximately $20,900 per month to LOL for debts owed by Debtor (with the remainder of its rental payment, approximately $16,000 per month, paid to 3-D Pig Company, Inc, a non-debtor entity). Additionally, Harrison Creek Farm currently leases land from Debtor and pays approximately $4,700 to LOL for debts owed by Debtor. This budget does not reference these third-party payments to LOL and Debtor will allow these third-party entities to continue making the aforementioned payments on an interim basis. Debtor hereby reserves its right to object to the continued payment of these payments in any final order proposed in connection with this Motion.*

---

[1] The Crop Sales projections are inherently speculative as anticipated transactions are dependent on commodity price fluctuations and market conditions.